## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:    **RICHARD PAUL GLUNK** | : | Chapter 7 |
| | : | |
| **Debtor(s)** | : | Bky. No. 05-31656-ELF |
| | : | |
| **DANIEL H. FLEDDERMAN** | : | |
| **COLLEEN M. FLEDDERMAN** | : | |
| **Co-Administrators of the Estate of Amy** | : | |
| **Marie Fledderman, Deceased and** | : | |
| | : | |
| **COLLEEN M. FLEDDERMAN,** | : | |
| **in her own right** | : | |
| **Plaintiff(s)** | : | |
| | : | |
| **v.** | : | |
| | : | Adv. No. 06-373 |
| **RICHARD P. GLUNK, M.D., et al.** | : | |
| **Defendants** | : | |
| | : | |

# M E M O R A N D U M

### I.

On August 31, 2001, Daniel H. Fledderman and Colleen M. Fledderman (collectively,

"Mr. and Mrs. Fledderman"), in their capacities as co-administrators of the Estate of the Amy

Fledderman ("the AF Estate"), and Mrs. Fledderman, in her own right, filed a lawsuit against Dr.

Richard P. Glunk ("the Debtor") and various other Defendants in the Court of Common Pleas,

Philadelphia County, Pennsylvania, docketed as No. 3619, August Term 2001 ("the CP

Action").[1]  The other defendants named in the CP Complaint were Main Line Plastic Surgery and

---

[1]  Mr. and Mrs. Fledderman filed a later lawsuit involving the same subject matter.  The later filed lawsuit was docketed at No. 1942 February Term 2002 (C.P. Phila.).  The state court issued an order dated August 2, 2002, consolidating the two lawsuits "for all purposes under the caption of the earliest filed case," i.e., the C.P Action.  Debtor's Notice of Removal ¶3.

Laser Associates (an entity through which the Debtor operated a medical practice), Main Line

Health, Inc., Jefferson Health System, Inc., Montgomery Hospital, Trustees of the University of

Pennsylvania and the Hospital of the University of Pennsylvania ("the Other CP Defendants").

Subsequent to the filing of the Complaint, Montgomery Hospital was dismissed as a defendant.

Not surprisingly, the Other CP Defendants filed various cross-claims against each other. Mr.

and Mrs. Fledderman have requested a jury trial in the CP Action.

The underlying basis for the litigation is a surgical procedure that resulted in the death of

Mr. and Mrs. Fledderman's 18 year old daughter, Amy Marie Fledderman. In the CP Action, Mr.

and Mrs. Fledderman asserted the following claims:

- a negligence claim against the Debtor and certain of the Other CP Defendants;

- a claim for lack of informed consent and battery against the Debtor and certain of the Other CP Defendants;

- a claim for punitive and exemplary damages against the Debtor and certain of the Other CP Defendants;

- a claim for negligent infliction of emotional distress against the Debtor and certain of the Other CP Defendants (asserted by Mrs. Fledderman only).

On August 31, 2005, the Debtor filed a voluntary petition under chapter 7 of the

Bankruptcy Code in this court. On November 29, 2005, Mr. and Mrs. Fledderman filed a Motion

to Dismiss this chapter 7 bankruptcy case on the ground that it was not filed in good faith and a

Motion to Modify the Automatic Stay.

On December 19, 2005, Mr. and Mrs. Fledderman initiated an adversary proceeding

requesting that this court determine their claims against the Debtor to be nondischargeable

pursuant to 11 U.S.C. §§523(a)(2)(A) and (a)(6) ("the §523 Adversary"). The Debtor filed a

Motion to Dismiss the §523(a)(2)(A) claim only.

On June 12, 2006, I made the following rulings in the main bankruptcy case and the

§523(a) Adversary:

> 1. I denied Mr. and Mrs. Fledderman's Motion to Dismiss the Debtor's chapter 7
> bankruptcy case.
>
> 2. I granted Mr. and Mrs. Fledderman's motion for relief from the automatic stay.
> I authorized them to resume prosecution of the CP Action and to proceed
> against any available insurance benefits in order to obtain satisfaction or
> partial satisfaction of any judgment which may be entered in their favor in the
> CP Action.
>
> 3. I granted the Debtor's Motion to Dismiss the §523(a)(2)(A) count of the
> adversary complaint. I also granted Mr. and Mrs. Fledderman leave to amend
> the adversary complaint.

In re Glunk, 343 B.R. 754 (Bankr. E.D. Pa. 2006); In re Glunk, 342 B.R. 717 (Bankr. E.D. Pa.

2006).

On July 11, 2006, the Debtor filed a Notice of Removal in this court. The Notice of

Removal stated that it was the Debtor's intent to remove both of the state court actions that were

consolidated under the caption of the CP Action. Debtor's Notice of Removal ¶3 n.1. Also, in

case there was any doubt on the subject, the Debtor's counsel expressly stated during the August

2, 2006 hearing in this matter that it was the Debtor's intention to remove to federal court the

entire state court proceeding, including all of the claims asserted by Mr. and Mrs. Fledderman

against the Other CP Defendants and all of the Other CP Defendants' cross claims.

On July 14, 2006, I issued an order scheduling a status conference for August 2, 2006 in

which I requested that counsel be prepared to discuss the following subjects:

1. remand of the removed proceeding pursuant to 28 U.S.C. §1452(b);

2. withdrawal of the reference by the district court of the removed proceeding
   pursuant to 28 U.S.C. §157(b)(5) and §157(d); and

3. withdrawal of the reference by the district court of the §523(a) Adversary.

On July 18, 2006, Mr. and Mrs. Fledderman filed a Motion for Remand of, or Abstention

from, Civil Action Removed the Court of Common Pleas Philadelphia County ("the Motion"),

which was scheduled for a hearing on August 2, 2006. The Debtor filed a written objection to

the Motion on August 1, 2006. A status conference and a hearing on the Motion was held on

August 2, 2006.


## II.

Several provisions of the Federal Judicial Code and the Federal Rules of Bankruptcy

Procedure must be considered in ruling on the Motion.

The Debtor's Notice of Removal was filed by the Debtor pursuant to 28 U.S.C. §1452(a)

which provides:

> A party may remove any claim or cause of action in a civil action other than a
> proceeding before the United States Tax Court or a civil action by a governmental
> unit to enforce such governmental unit's police or regulatory power, to the district
> court for the district where such civil action is pending, if such district court has
> jurisdiction of such claim or cause of action under section 1334 of this title.

The right to remove a claim pending in state court requires that federal bankruptcy

jurisdiction exist under 28 U.S.C. §1334 with respect to the removed claim. E.g., In re Evarts,

2006 WL 696136 (Bankr. D.N.H. March 14, 2006). If federal bankruptcy jurisdiction exists,

then, under 28 U.S.C. §157(a), the district courts may refer cases under title 11, as well as all

proceedings arising under title 11, or arising in or related to cases under title 11 to the bankruptcy

court. 28 U.S.C. §157(a). In this district, the district court has adopted a Standing Order,

pursuant to which cases meeting the criteria set forth in 28 U.S.C. §157(a) are referred to the

bankruptcy court. See, e.g., In re Lassina, 261 B.R. 614 (Bankr. E.D. Pa. 2001).

The Court of Appeals has concisely summarized the jurisdictional framework governing

bankruptcy cases as follows:

> Bankruptcy court jurisdiction potentially extends to four types of title 11 matters:
> (1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings
> arising in a case under title 11, and (4) proceedings related to a case under title 11.
> Cases under title 11, proceedings arising under title 11, and proceedings arising in a
> case under title 11 are referred to as "core" proceedings; whereas proceedings "related
> to" a case under title 11 are referred to as "non-core" proceedings. Proceedings
> "related to" title 11 case include causes of action owned by the debtor that become
> property of the bankruptcy estate under 11 U.S.C. § 541(a), as well as suits between
> third parties that conceivably may have an effect on the bankruptcy estate.

In re Combustion Engineering, Inc., 391 F.3d 190, 225-26 (3d Cir. 2004) (quotation marks and

citations omitted).

The Debtor contends that the claims raised in the CP Action "relate directly to the issue

of whether the claims against the Debtor's estate are dischargeable . . . ." Debtor's Notice of

Removal ¶7. If this premise is correct, it follows that the CP Action is at least "related to" this

bankruptcy case.

I agree with the Debtor that the CP Action is "related to" this bankruptcy case as that

jurisdictional term of art has been defined by the Third Circuit.[2] See, e.g., Pacor v. Higgins, 743

---

[2] The Debtor takes the argument one step further and contends that the CP Action is a
"core proceeding." Debtor's Notice of Removal ¶ 9. I disagree. A proceeding is core if it
invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could
only arise in the context of a bankruptcy case. E.g., Halper v. Halper, 164 F.3d 830, 836 (3d Cir.

F.2d 984 (3d Cir. 1984);[3] accord, In re Guild and Gallery Plus, Inc., 72 F.3d 1171 (3d Cir. 1996).

As I stated in an earlier opinion in this case:

> [I]f the matter is fully litigated in state court, there is a possibility that no additional
> proceedings will be necessary in this court or such proceedings may be of a limited
> scope, particularly if appropriate fact-finding is done by the state court jury. In other
> words, after the comprehensive trial in the more appropriate forum, there is a
> reasonable likelihood that all that will left for this court is the "mini-trial" on
> dischargeability suggested by the Debtor.[38]
>
> > [38] I expect that it is in the interest of all parties to obtain answers to written
> > interrogatories from the jury in the CP Action, insofar as that is possible under
> > the state court procedural rules, so as to narrow the issues which must be
> > resolved in order to determine the dischargeability of any liability that may be
> > found in the CP Action.

In re Glunk, 342 B.R. at 742 & n.38.

In light of the interrelationship between the CP Action and the §523(a) Adversary, it

would appear that the Debtor has set forth bona fide statutory grounds for the removal of the CP

Action to federal court.[4] However, that jurisdiction exists over the removed claims is only the

_____

1999). See also 28 U.S.C. 157(b)(1). I fail to see how the state law claims asserted in the CP
Action fall within the definition of core proceeding articulated by the Court of Appeals or set
forth in more detail in 28 U.S.C. 157(b)(1) and I see no need for any extended analysis of the
issue.

[3] The Supreme Court has effectively overruled Pacor with respect to its construction of
the 28 U.S.C. §1447(d) (reviewability of an order remanding a removed case back to state court).
See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S.Ct. 494 (1995). However, the
Pacor test for the boundaries of non-core jurisdiction continues to be widely followed. See
Celotex Corp. v. Edwards, 500 U.S. 300, 308, 115 S.Ct. 1493, 1499 (1995).

[4] I also observe that there is no dispute in this case that the Debtor's Notice of Removal
was filed within 30 days of the entry of the court's order terminating the stay and therefore, was
timely filed under Fed. R. Bankr. P. 9027(a)(2). Rule 9027(a)(2) provides:

> If the claim or cause of action in a civil action is pending when a case under the
> Code is commenced, a notice of removal may be filed only within the longest of
> (A) 90 days after the order for relief in the case under the Code, (B) 30 days after
> entry of an order terminating a stay, if the claim or cause of action in a civil action

-6-

starting point in the analysis. There are several provisions of the Judicial Code which, in certain

circumstances, either mandate or authorize a federal court to decline to exercise §1334

bankruptcy jurisdiction. Mr. and Mrs. Fledderman invoke three (3) such provisions: (1) 28

U.S.C. §1452(b), which states that the court "may remand [a removed] claim or cause of action

on any equitable ground;" (2) 28 U.S.C. 1334(c)(1), which states that nothing in §1334 prevents

the court from abstaining to hear a matter "in the interest of justice, or in the interest of comity

with State courts or respect for State law;" and (3) 28 U.S.C. §1334(c)(2), which mandates that

the court abstain from hearing a "related proceeding" in certain circumstances.

Two other provisions of the Judicial Code are relevant to the analysis. 28 U.S.C.

§157(b)(5) requires that "personal injury tort and wrongful death claims shall be tried in the

district court." Thus, if the removed CP Action remains in the federal system, trial of the matter

must take place in the district court.[5] Finally, 28 U.S.C. §157(d) gives the district court the

authority, for cause, to withdraw the reference, in whole or in part, of any case or proceeding that

has been referred to the bankruptcy court pursuant to 28 U.S.C. 157(a).

In seeking remand, Mr. and Mrs. Fledderman suggest that the "relatedness" of the CP

Action to the bankruptcy case is minimal. They point out that because this is a no-asset case, the

CP Action will not have any impact on bankruptcy estate assets or distribution to creditors

---

has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in
a chapter 11 reorganization case but not later than 180 days after the order for
relief.

[5] In this case, 28 U.S.C. §157(b)(5) makes consideration of 28 U.S.C. 157(e)
unnecessary. Section 157(e) provides that a jury trial may be conducted in the bankruptcy court
in certain limited circumstances.

(although they do not seem to dispute that the CP Action is likely to have some impact on the

§523(a) Adversary and, hence, the Debtor's discharge). Mr. and Mrs. Fledderman also

emphasize that the CP Action arises entirely under state law, was pending in the state court for

four (4) years prior to the commencement of the bankruptcy case and was very close to its trial

date before it was stayed under 11 U.S.C. §362(a).[6]  They also focus much of their argument on

what they consider to be the ongoing "bad faith" of the Debtor.  They perceive the removal as

"another attempt by Debtor to delay [the] medical malpractice case from proceeding to trial

against him, and to forum shop, very blatantly attempting to undo the effect of this Court's

Relief from Stay Order."[7]

Not surprisingly, the Debtor presents a different picture.  The Debtor emphasizes the

existence of the bankruptcy dispute, initiated by Mr. and Mrs. Fledderman, which requires a

determination whether the same conduct which gives rise to the alleged liability in the CP Action

renders the liability (if established) nondischargeable under §523(a)(2) or (a)(6) of the

Bankruptcy Code.[8]  The Debtor posits that removal of the action makes it possible for all

---

[6]  At the hearing, the parties reported that after relief from the automatic stay was granted, the substitution of new counsel for the Debtor and other scheduling issues caused the state court to schedule a trial date in February 2007.

[7]  The mere fact that the Notice of Removal was filed after the granting of relief from automatic stay cannot, by itself, establish that the removal was effected in bad faith.  Removal after relief from the automatic stay has been granted is expressly contemplated by Fed. R. Bankr. P. 9027(a)(2).  Still, the reasons for the court's prior determination to grant relief from the stay so that a matter may be adjudicated in another forum, in some circumstances, may be quite relevant in the exercise of the court's discretion to remand "on any equitable ground" under 28 U.S.C. 1452(b).

[8]  Of course, Mr. and Mrs. Fledderman's filing of the §523(a) Adversary Proceeding was necessitated by the Debtor invoking his right to seek relief in a federal bankruptcy court.  Thus, there is no denying that Mr. and Mrs. Fledderman are in the federal court system involuntarily

disputes between the parties – the state law claims and the bankruptcy dischargeability issue – to be resolved most efficiently in a single action:

> The factual findings of the jury in the [CP Action] will directly impact this Debtor's case. In that regard, perhaps the most critical aspect of the [CP Action] will involve the nature and scope of the trial instructions and interrogatories provided to the jury in the [CP Action]. . . . [I]t is critical that the same judge decide both the [CP Action] and the dischargeability issues to insure that such trial instructions and interrogatories given to the jury are not confusing and will assist in determining the scope of the Debtor's discharge as well as decide the [CP Action].

Debtor's Objection to Motion for Remand or Abstention ¶20. The Debtor suggests that the CP Action, which must be tried in the district court by virtue of 28 U.S.C. §157(b)(5), can be consolidated for trial with the §523(a) Adversary by having the district court withdraw the reference of the §523(a) Adversary pursuant to 28 U.S.C. §157(d).


**III.**

There is a well developed body of caselaw which provides guidance on the issue before me.

Mandatory abstention pursuant to 11 U.S.C. §1334(c)(2) is appropriate when six (6) requirements all are satisfied::

    1.  a timely motion is made;

    2.  the proceeding is based upon a state law claim or state law cause of action;

    3.  the proceeding is related to a case under Title 11;

    4.  the proceeding does not arise under Title 11;

---

and they are steadfast in proclaiming their preference that their rights be adjudicated in state court.

under 28 U.S.C. § 1334; and

6. an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

E.g., In re Asousa Partnership, 264 B.R. 376, 382 (Bankr. E.D. Pa. 2001); accord, Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006). The party seeking mandatory abstention has the burden of satisfying each of these requirements. In re Asousa Partnership, 264 B.R. at 382.

The decision whether to exercise the power to abstain under 28 U.S.C. 1334(c)(1) is within the sound discretion of the bankruptcy court. In determining whether to exercise discretionary abstention, courts consider the following factors:

1. the presence in the proceeding of nondebtor parties;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of the applicable law;

4. the presence of a related proceeding commenced in state court or other nonbankruptcy court;

5. the jurisdictional basis, if any, other than 28 U.S.C. S 1334;

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

10. the existence of a right to a jury trial;

11. the burden on the bankruptcy court's docket; and

> 12. the likelihood that the commencement of the proceeding in bankruptcy court
> involves forum shopping by one of the parties.

Id. at 391.

As for remand under 28 U.S.C. 1452(b), the "any equitable ground" standard for remand

in § 1452(b) is a broad grant of authority that leaves the remand decision to the discretion of the

bankruptcy court. In determining whether an equitable ground for remand exists, many courts

have used a seven-part test:

> 1. the effect on the efficient administration of the bankruptcy estate;
>
> 2. the extent to which issues of state law predominate;
>
> 3. the difficulty or unsettled nature of the applicable state law;
>
> 4. comity;
>
> 5. the degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case;
>
> 6. the existence of the right to a jury trial; and
>
> 7. prejudice to the involuntarily removed defendants.

E.g., In re Raymark Industries, Inc., 238 B.R. 295, 299 (Bankr. E.D. Pa. 1999).

By my count, there are twenty-five (25) overlapping considerations that may be relevant

in evaluating a request that a federal court decline to exercise 11 U.S.C. §1334 bankruptcy

jurisdiction over a removed state court matter. Fortunately, there are several other legal

principles which simplify the analysis.

First, the congressional policies embodied in § 1334(c)(2) may constitute an equitable

ground for remand. If an adversary proceeding commenced in bankruptcy court would be subject

-11-

to mandatory abstention, the identical proceeding removed from state court should be remanded

under § 1452(b). Stoe v. Flaherty, 436 F.3d 209, 215 (3d Cir. 2006); In re Pacor, Inc., 72 B.R.

927, 931 -932 (Bankr. E.D. Pa.), aff'd, 86 B.R. 808 (E.D. Pa. 1987), appeal dismissed, 1988 WL

235479 (3d Cir. Jan 27, 1988); accord, In re Taylor, 115 B.R. 498 (Bankr. E.D. Pa. 1990).

Second, if most of the criteria that Congress established for mandatory abstention under

1334(c)(2) have been met, bankruptcy courts should give careful consideration whether it would

be appropriate to exercise their discretion to abstain under §1334(c)(1). In re Futura Industries,

Inc., 69 B.R. 831, 834 (Bankr. E.D. Pa. 1987); accord, In re Argus Group 1700, Inc., 206 B.R.

737, 751 (Bankr. E.D. Pa. 1996), aff'd, 206 B.R. 757 (E.D. Pa. 1997).

Third, if grounds exist for discretionary abstention under §1334(c)(1), then remand under

§1452(b) is also proper. In other words, "a request for discretionary abstention presents the same

considerations as the request for equitable remand." DVI Financial Services Inc. v.

Cardiovascular Laboratories, Inc., 2004 WL 727105, at *2 (Bankr. E.D. Pa. 2004).

Finally, a court's evaluation of the numerous considerations listed above is not a

mechanical or mathematical exercise. As one court has observed,

> the list of factors is non-exclusive and was developed simply as a guide to the
> required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or
> bean-counting. Ultimately, the pursuit of "equit[y]," "justice" and "comity" involves
> a thoughtful, complex assessment of what makes good sense in the totality of the
> circumstances.

Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership, 2004 WL 1048239, at *3 (S.D.N.Y.

2004).

## III.

Unlike some matters, in which courts must choose between two less than satisfactory

alternatives, I perceive this dispute to present two potentially reasonable outcomes – or

outcomes that are plausible before consideration of some of the special jurisdictional concerns

that arise in the bankruptcy system.  If I remand the removed claims as Mr. and Mrs. Fledderman

request, I can expect the CP Action to be tried in state court in the near future.  Depending upon

the outcome of the trial, no further proceedings may be required in this court; otherwise, if the

§523(a) Adversary must be tried, there is a reasonable prospect that the state court trial will

narrow considerably the remaining bankruptcy dischargeability issues.  Alternatively, if I deny

the Motion, the district court can remove the reference with respect to the removed CP Action as

well as the §523 Adversary, potentially resulting in a single trial of all of the outstanding issues

among all of the parties.

Regardless of my sense of the general reasonableness of the two alternative scenarios, I

conclude that I am obliged, as a matter of law, to remand the CP Action. In other words, the

bankruptcy jurisdictional scheme created by Congress gives Mr. and Mrs. Fledderman an

effective veto power against the removal of the CP Action in the circumstances of this case.

Further, to the extent that I may have discretion in this matter, I find that under settled principles

of bankruptcy jurisprudence, the balance tips decidedly in favor of remand.

As explained above, if mandatory abstention is warranted, then a removed proceeding

must be remanded.  In this case, all of the elements of mandatory abstention under 28 U.S.C.

1334(c)(2) exist.  Mr. and Mrs. Fledderman have promptly and timely objected to the exercise of

federal jurisdiction over an action which is based entirely on state law claims.  The claims

-13-

asserted in the CP Action could not have been commenced in federal court absent jurisdiction

under 28 U.S.C. 1334. Considering that the parties have acknowledged that a trial can be

scheduled in state court as early as February 2007, I conclude that the CP Action can be timely

adjudicated in state court.[9] As the Court of Appeals recently explained, the mandatory abstention

provision, 28 U.S.C. 1334(c)(2), which is effectively incorporated into the concept of "equitable

grounds" for remand under 28 U.S.C. 1452(b),

> reflects a congressional judgment that a party who wishes to litigate a state claim in a
> state court, but finds himself in a federal court solely because the controversy is
> related to a bankruptcy, should be able to insist upon a state adjudication if that will
> not adversely affect the bankruptcy proceedings

Stoe v. Flaherty, 436 F.3d at 214.

   To the extent that I may have any discretion in this matter, I would exercise such

discretion to remand the CP Action.  I am influenced by the relatively modest degree of

"relatedness" that the CP Action has to the bankruptcy case.  The factual overlap between the CP

Action and the §523(a) Adversary, while not insignificant, also is not overwhelming.  At bottom,

the CP Action is primarily a traditional medical malpractice case in which state law issues

predominate.  I do not believe that the degree of bankruptcy relatedness is sufficient to overcome

the deference that should be accorded to Mr. and Mrs. Fledderman's choice of forum.  In other

words, while remand may result in the need for a second trial limited to the issue of

dischargeability, I do not find the possibility or even probability that the bankruptcy court will

have to conduct a trial of the §523(a) Adversary to "adversely affect" the bankruptcy

---

   [9] It is not clear to me that a trial in the federal system which, of necessity, must be held in
the district court, could be commenced any more quickly.

proceedings.[10]

There are also related comity considerations. The CP Action was pending in the state

court for four (4) years prior to the commencement of this bankruptcy case. The litigation has

been intensive and the state court has ruled on numerous pre-trial motions, as evidenced by a

written docket that is 47 pages long. Respect for the state court system dictates that absent an

overriding need in the bankruptcy case, the federal court should permit the state court to

complete the adjudication of a matter in which the state court has expertise and in which it has

already expended substantial resources. Absent some concrete evidence to contrary, and there is

none in the record, I must reject the Debtor's implicit argument that the state court is not fully

capable of providing "trial instructions and interrogatories to the jury [that] are not confusing and

imprecise but rather clear, precise and designed to provide such guidance and assist in

determining the scope of the Debtor's discharge as well as decide [the CP Action]." Debtor's

Objection to Motion for Remand or Absention ¶20. Consistent with established principles of

comity, I must assume that the state court is fully capable of fairly and competently determining

the matters before it.  See In re Halas, 226 B.R. 618, 623 (Bankr. N.D. Ill. 1998).  See generally

Pennzoil Co., Inc. v. Texaco, Inc., 481 U.S. 1, 15, 107 S.Ct. 1519, 1528 (1987) (federal courts

should "assume that state procedures will afford an adequate remedy, in the absence of

unambiguous authority to the contrary").

Finally, the Debtor elides over the impact of the removal of Mr. and Mrs. Fledderman's

claims against the Other CP Defendants.  At a minimum, it is questionable whether the

---

[10]  This is not a case in which prompt and efficient case administration (i.e., the collection
or distribution of estate assets) is dependent upon a resolution of the removed proceeding.

determination of the alleged liability of the Other CP Defendants will have any effect on this no-asset bankruptcy case in which the only bankruptcy issue is the scope of the Debtor's discharge. Thus, there may be no basis for the exercise of federal jurisdiction under 28 U.S.C. 1334 with respect to claims against the other CP Defendants (and the cross claims inter sese). In the absence of such jurisdiction, Mr. and Mrs. Fledderman's claims against the Other CP Defendants may have to be remanded. E.g., In re Evarts. See generally Halper v. Halper, 164 F.3d at 837 (each claim in an action must be examined separately to determine if it is core, related or wholly unrelated); Pacor v. Higgins, 743 F.2d at 994 (judicial economy by itself does not provide a basis for federal bankruptcy jurisdiction); In re Foundation for New Era Philanthropy, 201 B.R. 382. 398 (Bankr. E.D. Pa. 1996) (bankruptcy court lacks statutory authority to exercise district court's supplementary jurisdiction under 28 U.S.C. 1367).[11] If those claims were remanded, it would be Mr. and Mrs. Fledderman only (and neither the Debtor nor the Other CP Defendants) who would be subject to the added burden and expense of conducting two trials on related issues. Such a result would be inequitable and intolerable. I see no reason to subject Mr. and Mrs. Fledderman to that risk.

---

[11] If the bankruptcy court's holding in New Era cited above is correct, an issue I need not decide and as to which I recognize there is contrary authority, e.g., In re Sasson, 424 F.3d 864 (9th Cir. 2005), cert. denied, 126 S.Ct. 2890 (2006), perhaps it would be possible for the district court to exercise supplementary jurisdiction upon withdrawal of the reference of the CP Action. However, the mere existence of uncertainty regarding the jurisdictional basis for federal court adjudication of Mr. and Mrs. Fledderman's claims against the Other CP Defendants as well as any uncertainty whether the district court would exercise its discretion to invoke supplemenary jurisdiction are a powerful grounds for remand. The ongoing potential for multiple trials undercuts the Debtor's primary rationale for the removal of the CP Action.

**IV.**

Whether this matter is analyzed through the prism of mandatory abstention or

discretionary abstention, I conclude that the relevant considerations compel the conclusion that

Mr. and Mrs. Fledderman are entitled to a remand of the removed CP Action.  An appropriate

order will be entered.

Date:    8/18/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:     **RICHARD PAUL GLUNK** | : | **Chapter 7** |
| **Debtor(s)** | : | **Bky. No. 05-31656-ELF** |
| | : | |
| **DANIEL H. FLEDDERMAN** | : | |
| **COLLEEN M. FLEDDERMAN** | : | |
| **Co-Administrators of the Estate of Amy** | : | |
| **Marie Fledderman, Deceased and** | : | |
| | : | |
| **COLLEEN M. FLEDDERMAN,** | : | |
| **in her own right** | : | |
| **Plaintiff(s)** | : | |
| | : | |
| **v.** | : | |
| | : | **Adv. No. 06-373** |
| **RICHARD P. GLUNK, M.D., et al.** | : | |
| **Defendants** | : | |
| | : | |

### ORDER

**AND NOW,** upon consideration of the Plaintiffs' Motion for Remand of, or Abstention

from Civil Action Removed the Court of Common Pleas Philadelphia County ("the Motion"),

**AND** for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED**

that:

1. The Motion is **GRANTED**.

2. The above captioned adversary proceeding is **REMANDED** to the Court of Common Pleas

   Philadelphia County.

3. The Clerk shall close this adversary proceeding.

Date: _8/18/06_

_____
ERIC L. FRANK
U.S. BANKRUPTCY JUDGE